IN THE UNITED STATES DISTRICT COURT1
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID BRINKERHOFF, | : | |
| Plaintiff, | : | Case No. 2:04-cv-750 |
| v. | : | Judge Holschuh |
| ZACHRY CONSTRUCTION CORP., | : | Magistrate Judge Kemp |
| Defendant. | : | |
| | : | |

**Memorandum and Order**

Plaintiff brings this action against Defendant asserting claims of interference with, or restriction of, Plaintiff's rights under the Family Medical Leave Act, 29 U.S.C. §§ 2611 et seq. ("FMLA") as well as retaliation for exercising those FMLA rights. This matter is before the court on Defendant's motion to dismiss and compel arbitration or, alternatively, for a stay pending arbitration. (Doc # 4).

**I. Background**

Defendant is a corporation headquartered in Texas with operations in Wilkesville, Ohio. (Complaint at ¶2). Plaintiff was hired to work at Defendant's operations in Wilkesville as a medic in August 2001. (Affidavit of Katherine Chamrad at ¶4 attached to Defendant's Motion to Dismiss and Compel Arbitration).

On April 15, 2002, Defendant instituted a five-step Dispute Resolution Process ("DR Process"). (Chamrad Aff. at ¶5). That same day, Defendant alleges that it mailed, to all current employees, an introductory letter from Defendant's Vice President of Human Resources, a two

1

page Question and Answer sheet on the DR Process, a detailed brochure explaining the DR Process, and a video that also explained the DR Process. (Id. at ¶6). Defendant alleges that these materials were mailed to Plaintiff at the address Defendant had on file and were not returned to Defendant by the United States Postal Service. (Id. at ¶7). Additionally, Defendant alleges that, for three weeks, employees' paychecks contained a reminder about the institution of the DR Process and a similar reminder was included in the March/April 2002 issue of Defendant's company newsletter. (Id. at ¶6). Plaintiff, however, contends that he did not receive any of the materials or documents explaining the DR Process in April 2002 or at any time before the termination of his employment in August 2002. (Declaration of David Brinkerhoff at ¶3 attached to Plaintiff's Memo in Opposition to Defendant's Motion).

In the summer of 2002, Plaintiff underwent surgery on his gallbladder. (Compl. at ¶6). Plaintiff alleges that Defendant forced him to return to work ahead of the timetable his doctor prescribed and, as a result, his recovery was slowed. (Id.). Plaintiff also alleges that, during August 2002, he incurred one or more absences due to his gallbladder condition. (Id. at ¶7). Plaintiff contends that, on August 16, 2002, he was late to work because Defendant had "worked him around the clock to the point of utter exhaustion." (Id. at ¶8). Plaintiff was terminated on August 17, 2002, allegedly for having too many absences/tardies, including absences covered by the FMLA. (Id.).

After Plaintiff's termination in August 2002, he was re-hired by Defendant. Plaintiff concedes that, during his orientation for rehire, he was made aware of the DR Process. (Brinkerhoff Decl. at ¶7). On January 27, 2003, Plaintiff formally initiated the DR Process at step two by contacting a DR Process coordinator with respect to, *inter alia*, his claims regarding

2

his August 2002 termination and his gallbladder surgery. (Chamrad Aff. at ¶8). The dispute was not resolved at step two and, on June 17, 2003, Plaintiff requested that it be reviewed by Defendant's Internal Review Panel, step three of the DR Process. (Id. at ¶9; See also Exhibit B, attached to Defendant's Motion to Dismiss and Compel Arbitration).

On September 3, 2003, a hearing was held by the Internal Review Panel and, on December 8, 2003, the Panel issued its findings and recommendations concluding that there was no evidence to support Plaintiff's claims. (Chamrad Aff. at ¶10). Plaintiff rejected these findings and, on February 4, 2004, requested that his dispute proceed to mediation, the fourth step of the DR Process. (Id. at ¶11).

On May 5, 2004, a mediation was conducted by the American Arbitration Association and, although the parties left without resolving Plaintiff's dispute, the mediator continued to have discussions with the parties in an attempt to resolve the matter. (Id.). The last settlement proposal was made by Defendant on December 9, 2004. (Id.). Plaintiff did not respond to the last settlement proposal or request that the dispute proceed to binding arbitration, the fifth and final step of the DR Process. (Id. at ¶12).

Plaintiff instead initiated this action on August 16, 2004. Defendant was thereafter served with a summons and a copy of the complaint on December 15, 2004. On December 29, 2004, Defendant moved to compel the arbitration of Plaintiff's claims and dismiss the complaint. In the alternative, Defendant requests that the Court stay the proceedings pending arbitration of those claims.

**II. Discussion**

    **A. Standard**

Defendant seeks a dismissal of Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, Rule 12 provides in relevant part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .

Fed. R. Civ. P 12(b). As noted by this Court in an earlier order, because the parties have submitted, and rely on, matters outside the pleadings, the Court will treat Defendant's motion as a motion for summary judgment. (Order, pp.1-2 (April 19, 2005)).

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

4

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried.  Lashlee v. Sumner,  570 F.2d 107, 111 (6th Cir. 1978).  The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law.  Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003).  All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986);  Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001).  Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original).  A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).  See also Anderson, 477

U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

**B. Application**

Defendant argues that Plaintiff's claims should be dismissed because Plaintiff failed to arbitrate those claims pursuant to Defendant's DR Process.  Plaintiff, however, denies the existence of an enforceable arbitration agreement.  The Federal Arbitration Act, 9 U.S.C. § 1 et. seq. ("FAA"), provides in relevant part, that a district court must enter an order to arbitrate only upon being satisfied that the making of the agreement for arbitration is not an issue.  9 U.S.C. §4.  See also Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 23 (1983).  As the Sixth Circuit has recognized, "[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."  Javitch v. First Union Securities, Inc., 315 F.3d 619, 624 (6th Cir. 2003) (citations omitted).  See also Glazer v. Lehman Bros., Inc., 394 F.3d 444, 450 (6th Cir. 2005).  Additionally, when federal statutory claims have been asserted, a district court must also consider whether Congress intended those claims to be arbitrable.  Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000).

**1.  Enforceability of the Arbitration Agreement**

A written agreement to arbitrate disputes arising out of a transaction in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity, for the revocation of any contract."  9 U.S.C. §2.  State contract law governs in determining whether the arbitration clause itself was validly obtained.  Glazer, 394 F.3d at 451.

Plaintiff contends that there was no contract requiring him to arbitrate the allegations in his complaint because he was not aware of the DR Process until after he was fired from his position with Defendant and subsequently re-hired.  However, Plaintiff does not dispute that,

7

when he was re-hired, he was made aware of the DR Process and a valid agreement to arbitrate existed between himself and Defendant at that time.   Therefore, this Court concludes that a valid, irrevocable, and enforceable agreement to arbitrate exists in this case.

### 2. Scope of the Arbitration Agreement

This Court must now determine whether the scope of the arbitration agreement is broad enough to encompass the claims asserted by Plaintiff in this case.  "[T]he question of whether a contract's arbitration clause requires arbitration of a given dispute remains a matter of contract interpretation."  Seaboard Coast Line R. Co. v. Trailer Train Co., 690 F.2d 1343, 1348 (11th Cir. 1982) (citing Atkinson v. Sinclair Refining Co., 370 U.S. 238, 242 (1962)).  Where no ambiguity exists in an agreement to arbitrate, the language of the contract defines the scope of disputes subject to arbitration.  E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002).  Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . ."  Moses H. Cone Memorial Hospital, 460 U.S. at 24-25.  "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986) (citations omitted).

The arbitration agreement at issue in this case states, in relevant part, that both Defendant and Defendant's employees:

> agree to resolve disputes and legal claims against [Defendant] . . . through this
> process instead of  through the court system.

> * * *

> Both [Defendant] and the employee agree to resolve <u>any and all claims, disputes</u>

8

> <u>or controversies arising out of or relating to any application for employment, the terms and conditions of employment, and/or the cessation of employment</u> exclusively by final and binding arbitration . . . .

(Exhibit A, at pp. 2, 9, attached to <u>Defendant's Motion to Dismiss and Compel Arbitration</u> (emphasis added)).  The agreement goes on to provide:

> after the effective date of the [Defendant] DR Process, if an employee accepts or continues employment with [Defendant], the employee and [Defendant] agree to all provisions of the [Defendant] DR Process . . . includ[ing] the requirement that any legal dispute not resolved through Internal Review or Mediation will be submitted to final and binding arbitration rather than through the courts or to a jury.

(<u>Id.</u> at p.9).

The language of the arbitration agreement clearly indicates the parties' intentions to bind themselves to arbitration regarding any claims arising out of, or related to, the terms and conditions of employment or the cessation of employment.  There is no dispute that the claims asserted by Plaintiff in this case arose out of the terms and conditions of his employment and/or his termination in August 2002.  Thus, Plaintiff must arbitrate his claims.

The fact that Plaintiff's claims arose prior to his agreement to arbitrate does not alter this conclusion.  Plaintiff agreed to utilize the DR Process with respect to "any and all claims" arising out of the terms and conditions of his employment or his termination.  There does not appear to be any temporal limitation to this clause.  In fact, Plaintiff's actions confirm this conclusion.  Plaintiff initiated the DR Process with respect to his claims regarding his August 2002 termination and his gallbladder surgery.  However, Plaintiff abandoned the DR Process after the fourth step.  (<u>Chamrad Aff.</u> at ¶¶ 11-12).

This Court therefore concludes that Plaintiff's agreement to arbitrate "any and all claims . . . arising out of or relating to . . . the terms and conditions of employment, and/or the cessation

9

of employment" is broad enough to include his claims regarding his August 2002 termination and his gallbladder surgery.

### 3. Arbitrability of FMLA Claims

The Supreme Court has held that if Congress has demonstrated an intention to preclude a waiver of judicial remedies for statutory rights, the federal courts will not enforce an arbitration agreement. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991). A court should look at the text of the statute and its legislative history to determine if there is a conflict between arbitration and the goals of the statute. Gilmer, 500 U.S. at 26. Nothing in the language of the FMLA suggests that Congress wished to exempt disputes arising under it from the FAA. O'Neil v. Hilton Head Hosp., 115 F.3d 272, 274 (4th Cir. 1997).

This Court has previously supported the Fourth Circuit's interpretation of Congress's intentions relating to the arbitrability of FMLA claims. In O'Hara v. Mt. Vernon Bd. of Educ., this Court noted that "in the context of a private employment agreement, it is not surprising to find decisions following Gilmer holding that FMLA claims covered by an arbitration agreement must be submitted to arbitration and not brought in court." O'Hara v. Mt. Vernon Bd. of Educ., 16 F.Supp 2d 868, 881 (S.D. Ohio, 1998). This Court went on to say that there is no provision in the FMLA suggesting that agreements to arbitrate are unenforceable nor is there legislative history to support that contention. Id. (citing Satarino v. A.G. Edwards and Sons, Inc., 941 F.Supp 609, 613 (N.D. Texas, 1996)).

Therefore, this Court concludes that there is a valid, irrevocable, and enforceable arbitration agreement and that Plaintiff's claims are subject to that agreement. **WHEREUPON**, Defendant's motion to dismiss and compel arbitration (Doc. #4) is **GRANTED**.

**IT IS SO ORDERED.**

<u>July 14, 2005</u>                                            <u>/s/ John D. Holschuh    </u>
                                                                John D. Holschuh, Judge
                                                                United States District Court